By the Court. Vanderpoel, J.
The note in suit was transferred to the plaintiffs on the 19th day of February, 1847, by Mr. Ogden, the president of the Alliance Mutual Insurance *185 Company, under the following circumstances. On the 28th day of August, 1846, the plaintiffs took from the company a policy on the brig Mary Ann for $9600 ; the voyage to be from Baltimore to Port Maria, Falmouth, and Jamaica, to either first. On the day of the transfer of this note, the vessel had not been heard from for six months; but a vessel arrived at New Orleans, reported to have passed a wreck, and the name “ Mary Ann” was reported to have been seen on it. Mr. Ogden says, that he then gave to the plaintiffs for their los.s, the note in suit, with other notes as collateral security. He says his hope was, that the note would come back to the company, and that they would be able to pay the loss in cash; but in May, 1847, the company failed, and all its assets were passed over to a receiver. Aspinwall, one of the plaintiffs, had been a trustee of the company, and resigned on the 19th day of December, 1846.
The first question is, for what purpose was the note given 1 We consider it as having been given as a subscription note, or a premium note in advance, under the twelfth section of the charter of that company. Under the decisions we have made in a number of cases, affirmed by the court of appeals, this note must be regarded as a note liable to be used to pay the losses of the company. We so informed the counsel on the argument, and under this intimation, the discussion of that point was waived.
It is contended, that the transfer of the note was made by the president alone; and was not authorized by a previous resolution of the board of directors ; that it is therefore void, and passed no right or title therein to the plaintiffs. Without here considering the point, whether it lies in the mouth of the defendant to question the validity of the transfer, for the reasons assigned by him, we will inquire, whether the president had a right to make the transfer; and this involves the inquiry, whether this case comes within the provisions and prohibitions of the portions of the revised statutes relied upon by the defendant.
The revised statutes, (vol. 1, 591, § 8,) provide that “ no conveyance, assignment or transfer, not authorized by a previous resolution of its board of directors, shall be made by any such *186 corporation of any of its real estate, or of any of its effects, exceeding the value of one thousand, dollars ; but that this section shall not apply to the issuing of promissory notes or other evidence of debt, by the officers of the company, in the transaction of its ordinary business; nor shall it be construed to render void any conveyance, assignment, or transfer in the hands of a purchaser for a valuable consideration, and without notice.” This provision is found in the statute “ to prevent the insolvency of monied corporations and it may well be doubted whether it extends to mutual insurance companies of this description. (Gillett v. Campbell, 1 Denio, 520.)
At all events, we are quite clear, that this act of transfer does not come within the mischief against which it was the object of the statute to guard. The act or charter creating the company, provides that “ all the corporate powers of the company shall be exercised by a board of trustees, and such clerks and agents and other persons, as said trustees may appoint from time to time.” The trustees appointed a president, and by a by-law, which it was competent for them to make, they provided, that the president and vice-president should have authority to pay claims upon the company, in full, or by compromise. It is in evidence that this loss was paid by the president, in the usual way, and that it was common for him to pay losses with notes. There is nothing in the case, to warrant the suspicion, that the claim was not fair, or that there was any collusion between the president and the claimant, to whom the note was transferred. It is, to be sure, alleged, that Aspinwall had been a trustee, and hence, it is argued he must have known that the company was insolvent, when he took a transfer of notes, in payment of his claim. The contrary, however, satisfactorily appears. The transfer was made on the 19th of February, 1847. Aspinwall resigned as trustee on the 19th of December, 1846, and the company continued to take risks and do business till it failed, in May, 1847. We are not, on the evidence in the case, authorized to conclude that the company was in point of fact, insolvent when the note was transferred; nor can we yield to the idea, that Aspinwall’s previous connection with the company, as trustee, can in any manner invalidate the transaction.
*187 The whole scope of the statute “ to prevent the insolvency of monied corporations,” shows that its design, by the eighth section was, to prevent collusive transfers of the effects of such corporations. It surely could not have meant to interfere with honest transfers, made to pay their just debts. The ninth section, p. 591, clearly shows the penal effect which is to flow from the acts there prohibited. It provides, that “ no conveyance, assignment, or transfer by any such corporation when insolvent, or in contemplation of insolvency, shall be valid in law.” In the section next preceding, which prohibits a transfer without a previous resolution of the board of directors, the transfer is not declared void, if made without such authority. According to the familiar rule, 11inclusio unius est exclusio alterius,” there is a strong implication, that the legislature did not intend to declare all transfers void, if not authorized by a resolution of the directors. The implication is stronger, when the clause omitted is, as here, somewhat penal. The object of the eighth section was to guard against fraudulent transfers. The section employed to effect this object, seems to be rather directory in its character, than otherwise. But, if we are wrong in this view, we think another clause of the section shows that the transfer of the note in suit is not one of the transfers or assignments intended to be guarded against.
The concluding part of the eighth section provides, “ that the section shall not be construed to render void any conveyveyance, assignment, or transfer, in the hands of a purchaser for a valuable consideration, and without notice.” We consider the plaintiffs such purchasers. If a previous vote of the board of trustees were necessary, there is no evidence that they knew that such vote had been dispensed with. Though the president says, the notes were transferred to the plaintiff's as collateral security, yet they were transferred and applied as the twelfth section of the charter intended they should be applied. They were taken “ for the better security of dealers,” and were “ negotiated for the purpose of paying a claim ;” the very end which the charter intended they should serve. The consideration was not only valuable, but derives additional strength from the fact, that it is regarded by the charter as the principal *188 one to warrant a transfer. Though the president says, his hope was, that the note would come hack to the company, and that they would be able to pay the loss in cash, yet it does not appear that the policy of insurance was retained by the plaintiff, or that the original claim continued alive. The most that the president can be understood to mean is, that he hoped to be able to pay the claim in money before the note matured ; a proposition to which the plaintiffs would, no doubt, have very readily acceded. We think it fairly inferrible that the policy was given up to the company, and that the plaintiffs parted with enough, within the case of Stalker v. M’Donald, (6 Hill, 93,) to make them purchasers for value, if the defendant were in a position to object that he came by it otherwise.
But, does it lie in the mouth of the defendant to urge the objection here urged to the manner in which the plaintiffs came by the note ? Can he ask protection as the maker of the note, on the ground that it was transferred to the plaintiffs, in fraud of the legal or equitatile rights of the defendant % How has he been defrauded 1 His note has served the very purpose for which he gave it to the company. It has served to pay a just claim of the company. It is not enough for the maker of a note to say, that it was transferred to the plaintiff who prosecutes it, without a valuable consideration; but to defeat a recovery on it, he must show that it was transferred in fraud, or to the prejudice of his rights. It is no defence to an action on a promissory note, that the property of the note is in a third person, and not in the plaintiffs. Unless the possession of the note by the plaintiffs, is mala fide, and may work some prejudice to the defendant, the latter is not entitled to be heard on the subject. (Guernsey v. Burns, 25 Wend. 411. Hall v. Gird, 7 Hill, 587.)
In the latter case, it was held, that it was no defence to a suit in chancery, instituted for the foreclosure of a mortgage, that the complainants solicitor, by an agreement between him and his client was to have part of the demand when collected, by way of compensation for his services ; and that even at law, the fact that the demand has thus been illegally bought or sold, constitutes no defence to the debtor, in the appropriate *189 sense of the term. If the payees of the note here have authorized the plaintiffs to collect it, (which authority is involved in the transfer,) we cannot perceive on what sound principle the maker can be permitted to allege (the plaintiffs being in possession of the note,) that the plaintiffs did not pay value for it, or that a board of trustees did not vote for its transfer, unless he can show that he was defrauded, or lost some defence he might have had against the payees, had they retained it. Here, the defendant had no defence whatever against the insurance company, as the note was given for the purpose of enabling the company to pay claims. How were the defendants rights, in any respect, prejudiced by the transfer? It was not transferred in fraud of any of his rights ; and it does not lie with him to object to the manner in which the plaintiffs came by the note. We think the plaintiffs are entitled to judgment.
Judgment for the plaintiffs.(a)

 Affirmed in the Court of Appeals, April 17, 1850.