Moncrief, J.
The note was valid in the hands of the Company.
The Referee so found, and correctly. (16 N. Y. R., 324.) In respect to creditors of the Company, in good faith and in the usual' course of business, it was payable absolutely and in full. There was an actual loan of money at the time of transfer in this case. (Ogden v. Andre, MS.; heard, April, 1859; decided, May 21.[1])
The transfer to the plaintiff was made in good faith.
The Referee so found, and, I think, correctly. Neither the Receiver of the Company nor any of its officers has ever demanded or claimed the return of this note. The Referee so found.
There was no offer to show that the plaintiffs had any reason to suppose there was no resolution of the Board of Trustees authorizing the transfer. The fact that the plaintiffs received the note from the officers of the Company did not charge them with such notice. All dealings with a Company are done with its officers.
Such a resolution is not, under all circumstances, indispensable to a valid transfer. In Howland v. Myer, (3 Comst., 290,) the plaintiff dealt directly with the officers of the Company, and that case decides the precise point' that the absence of a resolution would not defeat a recovery.
*441 The Company had power to make the transfer. (3 Comst., 290.) The power was sufficiently exercised to pass the note to the plaintiffs.
The resolution of November 30,1855, was passed at a meeting of the Board of Trustees, (eleven members being present, and four of the Finance Committee,) and it directed “ that the officers commence at once to collect the notes to that amount, ($300,000,) and proceed in liquidating the liabilities of the Company therewith.”
By-law X expressly authorizes the President or Vice-President, with the advice and consent of the Finance Committee, or a majority of them, to assign, transfer, or otherwise validly dispose of, bills receivable, or any assets, to secure the repayment of money borrowed by them,.the payment of losses, or other purposes, that shall have been sanctioned by the Finance Committee.
The two notes, held by the plaintiffs past due, were pressing for payment. They probably were for losses. It was an undisputed claim against the Company. •
At the meeting of the Board of Trustees on the 7th November, all of the Finance Committee were present, when the “ Committee appointed to settle with Mr. Brookman, (plaintiff,) reported that they had not yet completed the settlement.” (The pro-gramme for procuring the necessary means had not yet been matured. The subscription list is dated the next day, the 8th.)
At the time of the transfer, December 10th, the President, Vice-President, and two of the Finance Committee were present. (Probably others sanctioned it.) It required but three members to constitute a quorum of the Finance Committee, a majority of whom could transfer, &c., &c. The transfer has never been repudiated, and no question ever raised as to the proper transfer to the plaintiffs, except by the defendant.
Gardiner, J., (3 Comst., 292,) says: “I apprehend that the Company were not restricted by the statute to a negotiation for the purposes of payment exclusively. They might procure the note to be discounted, and apply the avails in discharge of their responsibility for losses incurred; or, if this could not be done, the same result might be obtained by a transfer of the note to the plaintiff, upon the indorsement of the Company—the creditor giving time until the securities matured.”
*442 It will be borne in mind that the note in that case was transferred by the President as collateral security. The point is expressly taken, (2 Sandf., 180-183;) and it is at least doubtful whether the loss was contingent or absolute for which it was given to secure the payment. It is questionable whether anything was given up at the time of receipt of the note.
In the present case, an absolute liability of the Company existed. - Two notes of the Company, over due, were in the hands of the plaintiffs, and they were pressing payment. The claim was indisputable. The amount was $5,574.56. The Company, at the time of the transfer of this note to the plaintiffs, paid them $2,000 in cash, and the plaintiffs permitted the Company to charge them their subscription of $2,000 as cash, thus leaving due to them, at the time of the transfer, the sum of $1,574.56 and interest.
. Upon receiving the note of the Company for the balance due on those two notes—$1,574.56 and interests $1,751.95—and the note in suit, with others, as collateral, the plaintiffs gave up the existing liability of the Company. The two notes were given up.
It seems clear to my mind that the present is a stronger case than Aspinwall et al. v. Myer, (2 Sand., 100,) and is embraced and determined by the principle laid down in 3 Comstock, 290.
Again, I do not see how it can justly be said that this transaction conflicts with section 8 of the statute. The act was passed to prevent insolvency. The arrangement entered into with the plaintiffs assisted the statute, in enabling the Company to continue its business, and actually did earn for the defendant a large amount of premiums which he did not pay to the Company.
. In my opinion the Referee erred, and a new trial should be directed, &c.
Woodruff, J.
The defendant had by a subscription with others agreed to give to the Atlas Mutual Insurance Company, notes in advance for premiums to the amount of $1,000. He did so. in two sums of $500 each. The condition of the subscription was that it should not be binding until the sum of $300,000 .was subscribed, and if it had never been subscribed the Company could not have required the defendant to give the notes; but on the other hand he could waive the condition and if *443 he afterwards gave the notes and no fraud upon him is shown, he must be deemed to have waived the condition by voluntarily giving the notes to the amount of such subscription; and on this ground alone'I regard the notes as valid, binding notes even in favor of the Company, although the fact be taken to be as the Referee has found, that the $300,000 subscription was not made up. If it were material, the correctness of that finding upon the evidence might be questioned. But still more clearly is the defendant bound in this case, for after his subscription he took out policies of insurance, the premiums upon which (exclusive of unearned premiums on his open policy) was nearly equal to the amount of his two notes. As that open policy was taken in pursuance of his subscription and in performance of his agreement, I apprehend the Company were entitled absolutely to require that the whole amount of the premium be paid. It was not the ordinary case of an open policy, on which premiums can only be collected to the amount of the risks indorsed thereon.
After not only giving his notes but actually receiving policies for the amounts, and more than the amounts of his notes, it is too late for him to say, in the absence of any fraud, that the $300,-000 subscription was not made up. (Holbrook v. Wilson, November Term, 1858;[1] Holbrook v. Basset, July, 1859.[2])
The defendant had agreed to gives notes in advance.
The note in question was therefore not only a note given for value in due course of business, but it was also a subscription note given in advance for premiums under the 12th section of the charter of the Company.
By the terms of that section, the Company were authorized to negotiate such note for the purpose of paying claims or otherwise in the course of its business.
It has often been held that such notes are valid binding notes, founded on sufficient consideration, and subject to transfer as business notes.
By the tenth of the by-laws of the Company the President or Vice-President, with the advice and consent of the Finance Committee or a majority of them, has authority to transfer bills receivable to secure the payment of losses or other purposes that shall have the sanction of the Finance Committee.
*444 On the 30th of November, 1855, the Board of Directors, after reciting the subscription which the defendant and others had made in advance of premiums, resolved “ that the officers commence at once to collect the notes * * * and proceed in liquidating the liabilities of the Company therewith.”
The Company was at that time indebted to the plaintiffs in a large amount.
On the 10th of December, two notes of the Company, amounting to $5.574.56, were past due.
The statute authorized the Company to transfer the note in question for any lawful purpose in due course of business.
The Board of Directors, by a specific resolution, authorized the officers of the Company to proceed at once in liquidating the indebtedness of the Company with this and other notes mentioned.
Here was authority enough, in my opinion, for the action of the officers.
Thereupon, a settlement was made with the plaintiffs in which they accepted $2,000 in money; consented to apply $2,000 of the money due to them on a subscription also in advance of premiums, thus accepting as cash a subscription for which, they were entitled to give notes on time; and agreed to give time for the payment of the residue of the sum then due to them for four months; in consideration of which the officers transferred to them the note in question as security for the payment of such residue at the end of such four months.
I think this was a valid transfer, authorized and upon sufficient consideration and in no wise inhibited nor invalidated by the statute.
If this be so the decision of the Referee was erroneous. At the time of the transfer to the plaintiffs, there was nothing due to the defendant, and therefore there was no right of set-off which can defeat the plaintiffs’ recovery.
If there be no existing debt due to the defendant, at the. time of the transfer of his note, he cannot set off a debt subsequently becoming due as against the assignee, although the assignment be made to secure an antecedent debt. In other words, an assignee, although he takes a note to secure a precedent debt, if there be no fraud, can collect such note notwithstanding his assignor may, by debts becoming due after the *445 assignment, owe the maker of the note the same or a greater amount.
Besides, in this case, the plaintiffs received the note, as already stated, for a sufficient consideration in the consent to allow as cash a subscription for which they had a right to give notes on time, and in the forbearance of the residue of the debt due them.
It is claimed, that inasmuch as the receipt given by the plaintiffs for the note in question, as collateral security to the note of the Company, contained a reservation of authority to sell the notes, if the note of the Company was not paid, that therefore a sale was the plaintiffs’ only remedy. That they are mere trustees to sell for account of the Company, and cannot sue on the notes. This claim is groundless. They received the notes as security, and have the legal title. They can, therefore, sue and collect the note. They have also the equitable title, holding the note as security they have a right to retain the money collected, and the circumstance that when collected it will go so far towards discharging the debt of the Company is only what is always true when the holder of such securities collects them. In that sense only the collection is for account of the principal debtor. (Nelson v. Wellington, July Term, Superior Court, 1859.)[1]
I concur, therefore, in the result to which Justice Moncrief has arrived.
The judgment must be reversed, and a new trial ordered. Costs to abide the event.
Ordered accordingly.

 Since reported, 4 Bosw., 583.

 4th Bosworth, 64.

 Ante, p. 147.

 Ante, page, 178.